IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| KELLY V. RAINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )  1:11cv189 (JCC/IDD) |
| | ) |
| EAST COAST TOWING AND | ) |
| STORAGE, LLC, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendants East Coast Towing and Storage, LLC and Timothy Stiegelman's [1] Motion for Summary Judgment (MSJ). [Dkt. 32.] For the reasons stated below, the Court will grant in part and deny in part Defendants' Motion.

**I.   Background**

Plaintiff Kelly V. Rains worked as a tow truck driver for East Coast Towing and Storage, LLC (East Coast Towing) from approximately June 10, 2008 through January 28, 2011. (Complaint [Dkt. 1] ¶ 5; MSJ at 2, 6). East Coast Towing operates a towing company that tows vehicles in the Commonwealth of Virginia. (Decl. of Timothy Stiegelman [Dkt. 33-1] ¶ 3;

---

[1] Plaintiff originally sued East Coast Towing, LLC and Timothy Stiegelman's wife, Amy Stiegelman, in addition to Defendants. (Compl. ¶ 1.) East Coast Towing, LLC was dismissed from this action without prejudice on March 2, 2011 [Dkt. 3] and Amy Stiegelman was dismissed with prejudice on August 16, 2011 [Dkt. 25].

1

Compl. ¶ 2.) Defendant Timothy Stiegelman, President of East Coast Towing, hired Plaintiff to tow vehicles in Northern Virginia. (Stiegelman Decl. ¶¶ 2, 7.) Plaintiff towed impounded cars only within the state and did not conduct any other business for East Coast Towing. (Stiegelman Decl. ¶¶ 1, 8; Rains Dep. Tr. [Dkt. 33-7] 82:22 to 83:10.)

Plaintiff alleges that Defendants did not pay him all of the commissions he earned and, therefore, his hourly pay falls below the minimum pay required by the Federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.* (Compl. ¶ 6.) He seeks to recover unpaid wages, liquidated damages, and reasonable attorneys' fees under the FLSA. *See* 29 U.S.C. § 216(b). (Compl. ¶ 11.)

Defendants filed their Motion for Summary Judgment on August 26, 2011. [Dkt. 33.] Plaintiff filed a Memorandum in Opposition (Opp.) on September 9, 2011. [Dkt. 38.] Defendants filed a Reply to Plaintiff's Memorandum in Opposition (Reply) on August 14, 2011. [Dkt. 39.]

Defendants' motion is before this Court.

## II.     Standard of Review

Summary judgment is appropriate only if the record shows "no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-

3

movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

Defendants make three general arguments in support of summary judgment: (1) that Plaintiff is not entitled to coverage under the FLSA as an individual employee; (2) that East Coast Towing is not covered by the FLSA because it does not qualify as an "enterprise"; and (3) that a two year statute of limitations applies to this case because Defendants did not commit a "willful" violation of the FLSA.  (MSJ at 2.)  The Court will consider each of these in turn.

A. <u>Employee Engaged in Commerce</u>

Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires that "all covered employers compensate their employees at the rate of one and one-half times their normal hourly rate for all hours worked in excess of a forty-hour week." *Purdham v. Fairfax County Sch. Bd.*, 637 F.3d 421, 426-27 (4th Cir. 2011).  There are two general ways employers become covered. One is that the employee requesting FLSA protection is himself "engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).[2]  The other is that the

---

[2] 29 U.S.C. § 207(a)(1) states in full: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is

4

employee "is employed in an enterprise engaged in commerce or in the production of goods for commerce." *Id*. Under either avenue of coverage, individuals seeking compensation pursuant to the FLSA "bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act." *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999).

Turning first to the question of whether Plaintiff was engaged in commerce or in the production of goods for commerce, the Supreme Court has recognized that the test for whether an employee is "engaged in commerce" is relatively narrow. "Congress, by excluding from the Act's coverage employees whose activities merely 'affect commerce,' indicated its intent not to make the scope of the Act coextensive with its power to regulate commerce." *Mitchell v. Lublin*, 358 U.S. 207, 211 (1959). "However, within the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction." *Id.* And, "whether an employee is engaged 'in commerce' within the meaning of the present Act is determined by practical considerations, not by technical conceptions." *Cook v. Nu-Tech Housing Services, Inc.*, No. 91-1159, 1992 U.S. App. LEXIS 1443, at *6

---

engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

(4th Cir. Feb. 5, 1992) (citing *Mitchell v. C.W. Vollner*, 349 U.S. 427, 429 (1955)). Finally, the Court has noted that "[b]road coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985).

The FLSA defines commerce as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). This extends to the movement of tangibles and intangibles and covers interstate credit card transactions. *See Shelton v. Inn at Trivium*, No. 6:08cv00040, 2009 U.S. Dist. LEXIS 38268, at *7-8 (W.D. Va. May 6, 2009); 29 C.F.R. § 776.9 (interpretive guidance). The activities that constitute commerce must be "regular and recurring," as activities that are "isolated, sporadic, or occasional" are insufficient to result in coverage. *Id.* at *6; 29 C.F.R. § 776.3 (interpretive guidance).

When the activities are "related to interstate instrumentalities or facilities," a court must determine "'whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather

6

than isolated, local activity.'" *Mitchell v. Lublin*, 358 U.S. at 212 (quoting *Mitchell v. C. W. Vollmer & Co.*, 349 U.S. 427, 428-429 (1955)).  In *Mitchell v. Lubin*, the Supreme Court found that draftsmen, fieldsmen, clerks, and stenographers who were working intimately with the plans for the repair and construction of various interstate instrumentalities, and who were necessary to the ability of the instrumentality to function, were "engaged in commerce."  *Id.*  See also *Overstreet v. North Shore Corp.*, 318 U.S. 125, 132 (1943) (holding that operators of a drawbridge on a toll road used by vehicles traveling in interstate commerce were engaged in commerce).  Similarly, the Fourth Circuit has found that employees working for a wrecking business that also towed vehicles from interstate highways were engaged in commerce because they "helped to keep the interstate flow of traffic free and unobstructed . . . ." *Crook v. Bryant*, 265 F.2d 541, 543 (4th Cir. 1959); *see also Gray v. Swanney-McDonald*, Inc., 436 F.2d 652, 653 (9th Cir. 1971) (finding that towing and road services for the national highway system is essential to the free flow of traffic on that system).

In addition to considering whether the employee "directly contributes to the repair or extension of facilities of interstate commerce," the Fourth Circuit has also considered whether the employee "crosses state lines in connection with his employment" and whether the employee "handles goods directly

7

moving in the channels of interstate commerce." *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451, 457 (4th Cir.1963).  In *Modern Trashmoval*, the employees were engaged in the collection and disposal of trash in the City of Baltimore.  *Id.*  The Court explained that the employees were not covered by the FLSA because "[f]ar from feeding or supporting the interstate flow of commerce, these employees deposited the materials handled at an ultimate in-state destination."  *Id.; Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 525 (D. Md. 2006) (finding that a restaurant employee did not participate in the channels of commerce when serving out of state customers).

In a separate case the Fourth Circuit found that employees who mailed newsletters (among other things) to people outside of the state in an "attempt to obtain out-of-state customers" were engaged in commerce.  *Wirtz v. Wardlaw,* 339 F.2d 785, 787 (4th Cir. 1964); *see also Shelton*, 2009 U.S. Dist. LEXIS 38268, at *6-8 (finding that a Virginia inn employee was engaged in commerce when she started regularly handling interstate phone calls and credit card transactions).

Plaintiff's duties as a tow truck driver "consisted primarily of towing vehicles that were illegally parked or violated private parking rules from private lots in Arlington County, Fairfax County, and Alexandria City."  (Rains Aff. [Dkt. 38-1] ¶ 3.)  Plaintiff never towed any of those vehicles across

state lines to Washington D.C. or Maryland. (Rains Dep. Tr. 82:22 to 83:10.) Thus, unlike individuals who cleared wrecked vehicles from the interstate, Plaintiff was not regularly engaged in helping "keep the interstate flow of traffic free and unobstructed."

Furthermore, Plaintiff does not allege that he handled interstate phone calls or credit card transactions and it is undisputed that Plaintiff did not cross state lines in connection with his employment. Plaintiff did handle some objects that likely had crossed state lines and likely would do so again, but there is no evidence that they were goods directly moving in the channels of interstate commerce. Plaintiff argues that being towed constitutes transportation in the course of interstate travels for those vehicle owners with out of state plates. (Opp. at 12.) Yet, there is no evidence indicating the vehicles were transporting goods across state lines, that the vehicles themselves were being transported as goods, or that any goods were directly moving in an identifiable stream of commerce.

Although Plaintiff may have had an *effect* on a vehicle moving in interstate commerce, it was not one that is "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce." This Court finds that the Plaintiff's towing of vehicles between private lots within

9

Virginia to other private lots within Virginia is a decidedly local pursuit.  As a result, based on the evidence submitted, this Court GRANTS Defendant's motion for summary judgment on the basis that Plaintiff is not entitled to coverage under the FLSA as an individual employee.

### B. "Enterprise"

Even if Plaintiff was not individually engaged in commerce, he may still be covered by the FLSA's overtime provisions if he was an employee in an "enterprise engaged in commerce or in the production of goods for commerce."  Here the commerce inquiry is different because the FLSA defines such an enterprise as one that:

>     (A) (i) has employees engaged in commerce or in the production of goods for commerce, **or** that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; **and**
>         (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1) (emphasis added).

For the first part of the definition, "it is well established that local business activities fall within the FLSA when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce."  *Brock v. Hamad*, 867 F.2d 804, 808 (4th Cir. 1989).  This includes situations where an employer purchases goods which have moved in interstate commerce and his employees use such goods in

10

the course of their employment, even when the enterprise is the ultimate consumer of those goods. *See id*. at 807-8 (citing *Marshall v. Brunner*, 668 F.2d 748, 751-52 (3d Cir. 1982) (finding that employer who used trucks, truck bodies, tires, batteries, and accessories, sixty-gallon containers, shovels, brooms, oil and gas that had been manufactured out of state and had moved in interstate commerce was subject to the FLSA)); *see also Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 695 (4th Cir. 1990) (finding that the use of food preparation and cleaning supplies that had moved in interstate commerce was sufficient). An enterprise need not have the majority, or even any significant number, of its employees handling such goods. "The requisite connection to interstate commerce is shown where an employer has at least one employee who regularly ordered, received, and handled goods . . . that originated outside the [state]." *Martin v. Deiriggi*, 985 F.2d 129, 133 n.2 (4th Cir. 1992).

Plaintiff has produced specific evidence suggesting that East Coast Towing had employees handling and working on goods or materials that had been moved in or produced for commerce. First, in order to tow the vehicles, Plaintiff submits that he used a truck that had been manufactured outside of the Commonwealth of Virginia. (Rains Aff. ¶ 8.) Second, East Coast Towing accepted credit card payments, which required

use of out of state communication lines. (Cox Aff. [Dkt. 38-2] ¶ 5.) And finally, Plaintiff towed vehicles, approximately half of which had out of state license plates. (Rains Aff. ¶ 7.) Although this is not sufficient to make Plaintiff "engaged in commerce," it does meet the broader test of "moved in or produced for commerce." Thus, Plaintiff has produced evidence that taken together suggests that East Coast Towing has the requisite connection to interstate commerce to bring it within the purview of the statute as an enterprise engaged in commerce.

For the second part of the definition, Defendants assert that East Coast Towing's annual gross volume of sales made or business done was less than $500,000 in 2008, 2009, and 2010. (Memorandum in Support of Defendant's Motion for Summary Judgment [Dkt. 33] ("Mem.") at 16-20.) Defendants produced East Coast Towing's Form 1120S U.S. Income Tax Return for 2008 and 2009 suggesting that gross receipts were approximately $201,322 and $387,669 respectively. [Dkts. 33-3, 33-4.] And they produced a Statement of Revenue and Expenses for 2010 that indicates gross receipts were approximately $428,176. [Dkt. 33-6.] Finally, Defendants produced an affidavit from Mr. Stiegelman stating that East Coast Towing has never made in excess of $500,000 in any year since it began operations. [Dkt. 33-1.]

12

Plaintiff, however, has rebutted Defendant's production with testimony from two former East Coast Towing employees, along with his own testimony, stating that on average the company towed at least 15-24 vehicles per day. (Rains Aff. ¶ 9; Cox Aff. ¶ 12; Thompson Aff. [Dkt. 38-3] ¶ 12.) Plaintiff has also produced affidavits from those employees stating that the amount paid per vehicle towed averaged between $125.00 and $140.00. (Cox Aff. ¶ 13; Thompson Aff. ¶ 13.) Plaintiff submits that using the smallest figures (15 vehicles per day at $125.00), the annual revenue of East Coast Towing would have been $684,375. (Opp. ¶ 3.)

This Court finds that the affidavit of one of those employees, Mr. Thompson, would not be admissible as evidence because he was not sufficiently identified before the close of discovery. (See Reply at 18; [Dkt. 24].) Even so, Plaintiff has submitted enough evidence on the question of whether East Coast Towing exceeds $500,000 as to raise a genuine issue of material fact. Defendants assert that Rains could not possibly have personal knowledge of how many vehicles Defendants towed when he was not working. (Reply at 6.) Yet, Plaintiff asserts that it is based on his "constant interaction with [East Coast Towing] as a small company, and one of only three nighttime staff." (Rains Aff. ¶ 9.) Defendants also assert that the other employee, Ozaro Cox, did not have knowledge about the business

13

to accurately state the amount customers paid per car towed. (Reply at 8.)  Yet, Cox's affidavit states "[i]n accepting payments from drivers we accepted cash and credit cards, although Tim Stiegelman encouraged me to accept payments in cash."  (Cox. Aff. ¶ 5.)  And, Defendants point to tow logs and the maximum allowable local rates to suggest that the Plaintiff's estimates are inaccurate.  (Reply at 8-9.)  Yet, neither of these points of evidence is conclusive as currently presented to the total actual number of cars towed or rates charged.

Especially since computation of annual gross volume of sales is not limited to any particular twelve month period (see 29 C.F.R. § 779.266), this Court finds that Plaintiff has alleged sufficient evidence to create a genuine issue of material fact as to whether East Coast Towing meets the $500,000 threshold.  Therefore, this Court DENIES Defendants' motion for summary judgment on the basis that East Coast Towing does qualify as an "enterprise" under the FLSA.

### C. Willful Violation

"FLSA provides two potential limitations periods.  For non-willful FLSA violations, a two-year statute of limitations applies.  When the violation is willful, a three-year statute of limitations applies." *Desmond v. PNGI Charles Town Gaming*, L.L.C., 630 F.3d 351, 357 (4th Cir. 2011) (citing 29 U.S.C. §

14

255(a)) (internal citations omitted).  The Supreme Court has clarified that only those employers who "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]" have willfully violated the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (rejecting a test of willfulness that was simply whether the employer knew the FLSA was "in the picture").  Thus, negligent conduct is insufficient to show willfulness.  *Id.* at 135.  The Fourth Circuit has stated that recklessness requires "notice, actual or constructive -- of the existence and general requirements of the FLSA."  *Chao v. Self Pride, Inc.*, 232 F. App'x. 280, 287 (4th Cir. 2007).  The employee bears the burden of proof when alleging a violation is willful.  *See id.*

  Defendants argue that they did not commit a willful violation of the FLSA because Mr. Stiegelman had never heard of the FLSA until he received the complaint in this case. (Stiegelman Aff. ¶ 25; Mem. at 25-26.)  The only evidence Plaintiff submits on this count is an affidavit from Mr. Thompson stating that he complained to Mr. Stiegelman he should have been receiving overtime for any work over 40 hours per week.  (Thompson Aff. ¶ 17.)  Even if this were sufficient to raise a question as to whether Mr. Stiegelman was on notice, as discussed above, Mr. Thompson's affidavit is inadmissible. Therefore, this Court concludes that there is no genuine issue

15

of material fact pertaining to Plaintiff's claim that Defendants willfully violated the statute. Thus, this Court GRANTS Defendants' motion for summary judgment on this basis and a two year statute of limitations under the FLSA applies.

## IV. Conclusion

For these reasons, the Court will GRANT in part and DENY in part Defendants' Motion.

An appropriate Order will issue.

|  |  |
|---|---|
| September 20, 2011<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |